[No. F042889. Fifth Dist. Oct. 29, 2003.]

In re S.G., A Person Coming Under the Juvenile Court Law.

FRESNO COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. NAOMI L., Defendant and Appellant.

COUNSEL

Lawrence E. Fluharty, under appointment by the Court of Appeal, for Defendant and Appellant.

Phillip S. Cronin, County Counsel, and Howard K. Watkins, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Naomi L. appeals from a dispositional order denying her reunification services in her five-year-old daughter S.G.'s juvenile dependency. (Welf. & Inst. Code, § 361.5, subd. (b)(6).)[1] Appellant, who previously submitted the matter on evidence that she and her boyfriend caused the child serious physical harm, contends the court erred when it took her submission by not telling her that a possible consequence of her submission was that the court might deny her reunification services. She further claims the court committed reversible error when it failed to make on-the-record findings in denying her services. On review, we disagree and will affirm.

### PROCEDURAL AND FACTUAL HISTORY

In October 2002, Fresno police found five-year-old S.G. had multiple bruises on her thighs, legs, ankles, buttocks, back, arms, chin, forehead, and abdomen as a result of being struck repeatedly by appellant's live-in boyfriend with both a belt and an electrical cord taped into a looped instrument. In the opinion of an examining physician, S.G. was a victim of aggressive attacks involving belts and blunt force. Of particular concern to the physician was that the attacks also involved the child's head which had the potential to leave her with brain damage. The child also was made to stand on a bucket while she held another bucket for hours at a time and had hot sauce put in her mouth, as supposed forms of punishment. To prevent her from making noise, she was subjected to having duct tape placed over her mouth as well as socks put in her mouth during the physical assaults. Aware of this abuse, appellant failed to intervene and protect her child. On at least one occasion, appellant also struck her daughter with a belt and the looped extension cord.

These discoveries led to S.G.'s detention and the initiation of these dependency proceedings as well as the boyfriend's and appellant's arrest. At a January 2003 jurisdictional hearing, appellant, along with her attorney, elected to submit on dependency allegations under section 300, subdivisions (a), (b), (c) and (i). The judge in turn advised appellant that by submitting on the allegations, she was giving up "the right to have a trial on the issues presented by those allegations," "the right to see, hear and question all witnesses at that trial," and "the right to subpoena witnesses and present evidence in [her] own behalf." Appellant replied that she understood and agreed to give up those rights. The court also informed appellant of two possible consequences if it in turn found the allegations true. The court could remove the child from appellant's custody and ultimately order a permanent

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

plan, including adoption, if appellant could not complete a service plan within 12 months. The court did not advise appellant that alternatively it could remove the child from appellant's custody and not order reunification services.

Pending the dispositional hearing, respondent Fresno County Department of Children and Family Services (the department) prepared a social study recommending no reunification services for appellant. According to the department, appellant met the criteria for denial of services under section 361.5, subdivision (b)(6), in that the court found true allegations under a subdivision of section 300 as a result of severe physical abuse to S.G. by her mother and it would not benefit S.G. to pursue reunification services with her mother.[2]

At the scheduled dispositional hearing, appellant requested a contested hearing on the no-services recommendation. The court meanwhile placed S.G. with her father subject to family maintenance services. In her formal issue statement for the dispositional hearing, appellant contested one issue, that is: "Mother believes that it is in the best interests of the child that she be ordered family reunification services."

At the contested hearing, the department submitted the matter, in part, on a letter from the child's therapist. According to the letter, the child, who suffered post-traumatic stress disorder, expressed considerable anger toward her mother for not protecting her from the abuse. Although she loved and missed her mother, the child was reportedly adamant about not seeing

---

[2] Section 361.5, subdivision (b)(6) provides in relevant part:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶]

"(6) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child, a sibling, or a half-sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian. [¶] . . . [¶]

"A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body or the body of a sibling or half-sibling of the child by an act or omission of the parent or guardian, or of another individual or animal with the consent of the parent or guardian; deliberate and torturous confinement of the child, sibling, or half-sibling in a closed space; or any other torturous act or omission that would be reasonably understood to cause serious emotional damage."

appellant.[3] When asked if she would like to see her mother, S.G., still only five years old, replied that her mother should be in jail. In the therapist's opinion, ideally the child would reconcile with her mother but S.G. was not ready.

Appellant's trial counsel called the child's therapist to the stand and questioned her about the possibility of reconciliation and S.G.'s best interests. The therapist explained she did not mean "reconcile" in the sense of the minor ever living again with her mother. Rather, the therapist meant that if the mother could assume responsibility for what had happened to S.G. and essentially apologize, it would ease the child's hurt and anger.

Following the therapist's testimony, the court heard argument. In particular, counsel for appellant urged the court to order services on the theory that it would be in the child's best interest. Counsel for respondent argued against services, noting in part the severe harm S.G. suffered as set forth in the jurisdictional counts. On rebuttal, counsel for appellant made the point that "mother is not saying that those counts aren't true. She agreed to those counts." Counsel nevertheless contended it was in the child's best interests for the mother to receive services.

The court in turn ordered no services for the mother and incorporated its previous findings from the dispositional hearing for S.G.'s father.

## DISCUSSION

### I.

Appellant contends the court denied her due process when she waived her right to trial on the petition without being warned she might receive no family reunification services. She further argues the error was fundamentally unfair and warranted per se reversal of the jurisdictional findings. As explained below, we find no merit to her contention.

To support her claim of error, appellant cites California Rules of Court, rule 1449, which states that upon a parent's submission on dependency jurisdiction, the court shall make findings, including that the parent understands the possible consequences of the submission. (Cal. Rules of Court, rule 1449(f)(4).) She fails to cite, however, and our research has not uncovered any authority for her further contention that a court's failure to warn of possible consequences when it accepts a parent's submission constitutes a due process violation. In fact, by analogy to case law regarding

---

[3] The court had previously refused to order visitation.

*Boykin/Tahl*[4] admonitions in criminal prosecutions, an advisement about the consequences of a plea is not constitutionally mandated. Rather, the rule compelling such advisement is a judicially declared rule of criminal procedure. (*People v. Walker* (1991) 54 Cal.3d 1013, 1022 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *In re Patricia T.* (2001) 91 Cal.App.4th 400, 407 [109 Cal.Rptr.2d 904].)

■ Continuing with the analogy to criminal proceedings, we observe appellant has waived her claim of error. When the error complained of is a failure to advise of the consequences of a plea, the error is waived absent a timely objection. (*People v. Walker, supra,* 54 Cal.4th at p. 1023.) Here, respondent recommended an order for no services under section 361.5, subdivision (b)(6) in its social study. Appellant had notice of the recommendation for no reunification services and had the opportunity to be heard, which she exercised. Had the recommendation come as a surprise to appellant, it would have been a simple matter to bring this to the court's attention and correct the matter then. (See *People v. Walker, supra,* 54 Cal.4th at p. 1023.) At the contested hearing, however, she did not claim she would have requested a trial on the petition's allegations if she had known she might not receive reunification services. Instead, she conceded the severe physical harm allegation and introduced evidence on the best interests element. Having failed to object at the dispositional hearing, appellant cannot properly raise the court's failure to advise of a possible consequence of her submission on appeal.

## II.

Appellant also attacks the no-services order because the court did not make any explicit, on-the-record findings. In this regard, she cites section 361.5, subdivision (i), which provides: "The court shall read into the record the basis for a finding of severe sexual abuse or the infliction of severe physical harm under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child." Here, the court made no such findings.

Referring to this court's opinion in *In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1651–1652 [33 Cal.Rptr.2d 265] (*Rebekah R.*), appellant further contends that without explicit findings, the juvenile court could not properly rest its decision to deny services on section 361.5, subdivision (b)(6), and we

---

[4] *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]; *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709].

must reverse. As discussed below, appellant's reliance on *Rebekah R.* is misplaced. We further take this opportunity to clarify our opinion in *Rebekah R.*

In relevant part to this appeal, *Rebekah R.* involved a denial of reunification services to a father of an infant who suffered traumatic injuries. The mother, not the father, inflicted the infant's injuries. The court, in denying services to him, did not specify on what statutory ground it was ruling. (*Rebekah R., supra,* 27 Cal.App.4th at p. 1650.) We reversed because there was insufficient evidence to warrant the denial order on the one arguably applicable ground, subdivision (b)(5) of section 361.5. (*Rebekah R., supra,* 27 Cal.App.4th at pp. 1652–1656.) While the court also failed to make specific factual findings for a denial under subdivision (b)(6) of section 361.5, we did not reverse on that ground. (*Rebekah R., supra,* 27 Cal.App.4th at pp. 1651–1652.)[5] Thus, *Rebekah R.* does not stand and should not be read to stand for the proposition advocated by appellant, namely the failure to make findings necessary for a denial of services under section 361.5, subdivision (b)(6) mandates reversal.

The juvenile court in *Rebekah R.,* despite failing to specify its basis for denying services, addressed factors set forth in section 361.5, subdivision (h), which were to be considered in "determining whether reunification services would benefit the child pursuant to [subdivision (b)(6)]." We, however, found the court's reliance on that particular subpart of section 361.5 was error. (*Rebekah R., supra,* 27 Cal.App.4th at p. 1651.) At the time of *Rebekah R.,* section 361.5, subdivision (b)(6) was a new basis for the denial of reunification services, and its application depended then and now on the interplay between it and subdivisions (h) and (i) of section 361.5. We consequently took the opportunity in *Rebekah R.* to discuss the requisite findings for a denial under those circumstances. In the process, we did say that the court, having failed to make an explicit finding of harm within the scope of section 361.5, subdivision (b)(6), could not properly rest its decision upon that subdivision. (*Rebekah R., supra,* 27 Cal.App.4th at p. 1652.) We did not hold that absent explicit findings we could not uphold a denial under section 361.5, subdivision (b)(6). Indeed, in the next portion of our opinion, we reiterated the pertinent rule of appellate review, that is, we will infer a necessary finding provided the implicit finding is supported by substantial evidence. (*Rebekah R., supra,* 27 Cal.App.4th at p. 1652, citing *In re Jesse B.* (1992) 8 Cal.App.4th 845, 851 [10 Cal.Rptr.2d 516]; see also *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83–84 [261 Cal.Rptr. 462].)

---

[5] Because the father in *Rebekah R.* did not inflict the abuse, section 361.5, subdivision (b)(6) by its terms could not apply.

Notably, in this case, appellant does not contend there was insufficient evidence to support the court's denial of services under section 361.5, subdivision (b)(6). Instead, she argues the court's failure to make specific findings was prejudicial because she has no meaningful method of obtaining appellate review. She claims it is impossible to ascertain whether the juvenile court found severe sexual abuse, severe physical harm or neither; determined appellant inflicted the harm or consented to it; or found it would not benefit the child to pursue services.

We strongly disagree with appellant's disingenuous contentions. First, as mentioned above, appellant conceded the severe physical harm allegation. There was no evidence whatsoever of any sexual abuse. Further, the evidence of severe physical harm either on a theory of deliberate and serious injury or any other torturous act or omission that would be reasonably understood to cause serious emotional damage was undisputed. Second, given the mother's submission, the court could have properly found that appellant both inflicted the harm upon S.G. and consented to the harm and torture inflicted by her boyfriend. Third, given that the evidentiary and argument phases of the dispositional hearing focused almost exclusively on whether it would benefit the child to pursue reunification services with her mother, we have no doubt that the court found there was no such benefit.

## DISPOSITION

The order denying appellant reunification services is affirmed.

Cornell, J., and Levy, J., concurred.